Good morning, your honors. May it please the court. My name is Joseph Horry. I'm here representing the defendant below, appellant here, Tang Xiaoying. Good morning. Your honors, first I'd like to address today, I'd like to focus my argument on two issues, the article 3 court issue and the jury instruction issue. As for the others, I think they're adequately covered in the brief, so after we've dealt with those first two issues, unless the court has any particular questions regarding the rest, I'd like to reserve the rest of my time for rebuttal. Very well. On the article 3 issue, according to the Supreme Court in the Commodity Futures Trading Commission v. Schor, the constitutionality of any given congressional delegation of adjudicative functions to a non-article 3 body must, and I want to stress that must, be assessed by reference to the In other words, we must undertake what this court has called the Schor inquiry. This court provides a very good example of what needs to be done in a case called Noriega-Perez v. United States, 179 F. 3rd, 1166, where the court goes through each of the factors from Schor that need to be considered. But the district court in this case did not do that. It did not undertake that Schor inquiry. It simply held it's a territorial court, and territorial courts can, per se, be established without conformance to Article 3. That, your honors, is exactly the wrong way to approach an Article 3 question. Again, the Supreme Court in Schor teaches that practical attention to substance, rather than doctrinaire reliance on formal categories, should inform application of Article 3. What the district court did is exactly doctrinaire reliance on formal categories, particularly the formal category of the territorial court. And what it should have done instead is to analyze the issue on a court-by-court basis, just as is done with all the other types of courts that were formerly considered to be categorically exempt from Article 3. For example, courts of the District of Columbia. Does an exception to Article 3 exist for District of Columbia? No, as in O'Donohue. Treaty courts also, another formerly considered, per se, category. Does an exception to Article 3 exist for treaty courts? Sometimes yes, as in In re Ross, sometimes no, as in Reed v. Covert. So how do you distinguish Palmore? Palmore, your honor, is... Palmore itself distinguishes O'Donohue. Palmore takes up the situation of the DC courts, and it says, these DC courts, which it's addressing there, just deal with the local issues. They're not courts of general jurisdiction that undertake all the general civil and criminal cases of a regular federal district court. Therefore, it's distinct from the O'Donohue courts, which do have that general jurisdiction, although they're within the District of Columbia. On every point where Palmore distinguishes O'Donohue, our courts are like O'Donohue, not like Palmore. The District Court for the CNMI has all the same general civil and criminal jurisdiction, handles everything according to the same procedures, and is reviewed according to the same standards of review as a full district court of the United States. And yet it is not provided with the same institutional protections under Article 3. So Palmore deals with courts of jurisdiction. I distinguish on that basis. The government said that your client didn't carry her burden. Wasn't that their basic position? On this issue, your honor? Yes. I don't think that was their position. I think it was a question of, decided as a question of law. Well, so what is your opinion on why district court exceeded Congress's constitutional bounds and deprives the appellant of a constitutional right? Basically, that it doesn't meet the factors on shore, as this court looked into it in Noriega Perez. For example, the extent to which the essential attributes of judicial powers are reserved to an Article 3 judge. They're not reserved at all. All the judicial powers are exercised by the non-Article 3 judge in the district court. Similarly, is there limited jurisdiction? No, there's full jurisdiction. Are there, quote, are there congressional concerns motivating a non-Article 3 court? No concerns are apparent from the statute. Apparently it was done basically out of force of habit. The risk of domination from other branches. Another factor exists here. There is a risk of domination by the executive and legislative branches of the the district court based on the power to appoint or not appoint, confirm or not confirm that judge at the court needs to consider a point against the propriety of establishing this full jurisdiction court without the protections of Article 3. And that's true whether we consider it a territorial court as the court did consider it. In fact, this is a point that's often overlooked. It's not a territorial court. It was not established pursuant to the territorial clause. The Congress had no power under the territorial clause to establish it. It was established under Congress power, under the trusteeship agreement, through the treaty power. Therefore, like the court in In re Ross or the court in Reed v. Covert, it is a treaty court. Now she had a jury trial, right? Excuse me? There was a jury trial, correct? Yes. So she wasn't deprived of her right to a jury trial, right? So what what constitutional right was she deprived of? Insofar as it was a court with an independent judiciary to the whatever issues were decided by by the judge rather than by the jury were decided by a judge without the the protections that Article 3 mandates. And and so to that extent she was deprived of that right. And in addition, the Article 3 issue implicates not only the individual defendants rights, but also the the structural rights within the separation of powers, even even apart from any individual prejudice to the Even assuming that there's some authority for granting Article 3 protection to a judge like this one outside of the states, isn't that more of a political question that we should defer? The Supreme Court would say no, Your Honor. The Supreme Court has said that you need to that we need to address this in terms of the courts and really in every one of these questions, every one of these cases where it's come up, whether the courts decided it to be properly in Article 3 or properly not in Article 3, it's been the court to decide. It hasn't deferred to the political branches on that issue. It's analyzed it on its own on its own terms each time. So in the Ninth Circuit, what is what specifically is the case law? I mean there's I think there's an unpublished opinion. There is. And that goes against you, right? That goes against that goes against me. There's an unpublished decision that goes against me. The court in that decision for it basically analyzed it the same way as the court in district court did in this case. The district court basically followed this court's approach from that earlier case, the Sun case. And that case is is one that it was it was an unpublished case and like the district court's case it basically it just jumped over that issue of do we need to do the shore analysis? Do we need to do that inquiry? It's assumed that we don't. It assumes that it's a categorical. First it assumes that it's a territorial court, which is wrong. Then it assumes it's a... So besides making an argument for your client, you seem to be making an argument for publication. Your Honor, I'm making the argument for for my client and if it ends... But what you're saying is there isn't anything published in the Ninth Circuit? That's correct. That's correct. So to your point that your claim that it's not a territorial court, how do you deal with Justice Stevens' statement to the contrary and to win? That's dicta, Your Honor. So basically you think he was wrong? The Supreme Court was wrong in that? Yes, the Supreme Court was wrong. But the Supreme Court also was not binding when it said that. What happened in that case is the Supreme Court, both parties put it to the court, both parties... The issue before the court was whether a non-article 3 judge can sit. And the parties just did not get into the issue. The court did not get into the issue. What he says, though, is that court is not an article 3 court, but an article 4 territorial court with subject matter jurisdiction essentially similar to the jurisdiction of the District Court of Guam. Right, that's correct. Yeah. Well, the part of... And you disagree with that? The subject matter jurisdiction part is correct. The territorial court part is incorrect because it does not take into account the constitutional situation at the time of the establishment of the court, which was it would not be a territorial court because there was no territorial power. Any time that issue has come up regarding what was the power of Congress in legislating towards the trust territory of the Pacific Islands, it has always been determined it's through the treaty power based on the trusteeship agreement. Without the trusteeship agreement, Congress had no power to legislate towards the trust territory, whether to establish a court or administer it in any other way. It all flowed from the trusteeship agreement, which was a treaty. So where that decision needs to be made, where that analysis is done, where that distinction is drawn, and where it's relevant to the case, the decision has always been it's under the treaty power, not the territorial power. It so happens that in the Nguyen case it didn't matter one way or the other. No, but they didn't say it. They actually didn't say it was a territorial court. So we have to pay attention to Supreme Court dicta. Right, of course. And yet we do also have to recognize dicta as where we do need to make the distinction. We shouldn't be governed by dicta where that distinction was not drawn. But also I would say that in this case, even if it is a territorial court, and even if that dictum is correct, we still need to go through the shore inquiry. We still need to look at whether it was properly established. We can't just say categorically as a territorial court, if it is one, that that's proper. Because shore, again, tells us these rigid categories are a thing of the past. We can't look at it and say just per se, as a territorial court, as a public rights court, as a District of Columbia court, as a treaty court, just by virtue of that alone, that you can establish it without Article III. You need to look at it on a case by case basis, whether the purposes and reasons for Article III, if the departure from that is justified under the Constitution. I will. On the jury instructions, Your Honor, the court wrongly failed to give defendants instructions on her theory of the case. Now, her theory of the case was that her misrepresentations were not material, because they went to her status as an eligible spouse, and she was an eligible spouse. Now, a criminal defendant has a constitutional right to have the jury instructed according to her theory of the case, provided the required instruction is supported by law, and has some foundation in the evidence. Now, in this case, it was both. And this applies to both her materiality instruction and her marriage instruction. The marriage instruction... Well, but the District Court appeared to, the materiality instruction appears to have been based on the Supreme Court's opinion in Dennis v. the U.S. So, how is the instruction wrong? Instruction isn't wrong so much as it's incomplete. And I think the question is not... Well, if it's not wrong, that gives you a harder rock to push uphill. Well, our proposed, we're entitled to our proposed instruction if our proposed instruction is not wrong. If our proposed instruction accurately states the law, and it has a basis in the fact, the court must give that instruction unless our theory of the case is... Unless the court feels other instructions correctly cover it. The court doesn't have to give duplicate, you know, the court doesn't have to give everything that you propound to the court. But what the court gave, you know, and it was, it wasn't wrong, but it was insufficient. It was vague, it was abstract, and it was general when there is good law addressing the specific context in which this case arose. The context of what's material, in what kind of misrepresentations are material in the context of the application for a visa. There is in the, we need to look as in Kunjus to what, the court used this general language, is there a natural tendency to influence the decision. Which is fine, but what does that mean in this context where the decision to be made is the grant or denial of a visa. That is a question that Kunjus looked at itself, where the court wrote, said, whether it has a natural tendency to affect the official decision. Then the official decision in question, of course, is whether the applicant meets the requirements for citizenship. There it was citizenship, here it's a visa. So that the test more specifically, more specifically, it's the more specific one that we want, is whether the misrepresentation or concealment had a natural tendency to produce the conclusion that the applicant was qualified. So you're looking at the conclusion, whether the applicant is qualified. There is more detailed, more accurate, and more complete law that the court refused to give. And as a consequence of that, it was able to argue, without anything to contradict it in the instructions, points that are simply contrary to the law. For example, that it's sufficient that there would have been an investigation. If all that happened was her misrepresentations disrupted an investigation, that would have been enough. That would not have been enough. Under, we'll see in Kunjus and Justice Brennan's concurrence, which this court has held controlling, that it's not just that. It's that you need a fair inference of eligibility, coupled with the fact that the misrepresentation necessarily frustrated the government's investigative efforts. Both of those things. Not just obstructing the investigation, but also that there was a fair inference that an actual ground of ineligibility actually existed. You need both of those. Not just disrupting an investigation. Not just making it harder for the agency to reach a decision. It's not just the process that must be influenced. It's the decision. It's the conclusion that must be influenced. There must be some evidence, at least raising a fair inference, that an actual ground for ineligibility exists. We offered that instruction, and the court refused to give it. Whether Rossi is still the law, then our Rossi, in that case, our Rossi instruction was correct. We believe Rossi is still the law, and that Rossi does not conflict with Kunjus. That any difference between them really is a hair too fine to split. But if the court finds that there is a difference, and that Kunjus did overrule Rossi, then Kunjus is the law, and the court should have given our Kunjus instruction. It's correct. It's supported by the law and the facts. Thank you, counsel. Good morning. Garth Backe, on behalf of the United States Appellee. The United States submitted a very 60-page, I believe, response brief, which outlined the reasons why the conviction should be affirmed. I just would like to highlight and add, as well as provide the court with what we believe is the most efficient resolution of this appeal. First addressing, going from the end, starting with the appellant's last argument first, regarding the Title III application. Your Honor, you were correct to identify the government's position as being failed to carry the burden. That is our primary point here. The U.S. Supreme Court has said that the NMI District Court is a territorial court. This court has held it is a territorial court, indeed, in the face of these exact same arguments. And in so holding, it said it is settled that the NMI District Court is a territorial court. The appellant offers an opinion. Counsel, given that the Northern Mariana Island District Court hears federal criminal cases, isn't it more like an Article III court in O'Donohue than the Superior Courts in Palomar? Yes, it's more, but it's not up to, it's not. Why not? I mean, it seems, I mean, it's an interesting argument. It is potentially an interesting argument, but it's not near O'Donohue, if I'm pronouncing that correctly. If we are going to address that argument, let me, I will get to that, Your Honor, in one second. And on top of it, isn't it apparently, you know, looks to be apparently a permanent court. Well, that, I would, since the Covenant, I believe, under the reading of it, could be withdrawn by both, by the agreement of both parties, it is not permanent. Yeah. And then, appellant... How long has the Covenant been in place? That would be 1978, I believe. Your Honor, but if I may, if the appellant says it's a treaty court, and this goes to fail to carry the burden, she says it's not a territorial court. At best, what has been proven through her, the briefing, is that it's not a territorial court. But that doesn't answer the issue. Appellant says it's a treaty court. Well, what are the consequences of that if it is a treaty court? How is that to be resolved? Because what is not mentioned in any of the briefing is that the Covenant, which is not being challenged, expressly called for the formation of this district court that we're talking about. In 401, it said that the United States shall create this district court, and it was passed afterwards in furtherance of that. So, if it's a treaty court, then it should be sufficient as well. But the court being established by Congress, pursuant to treaty power, is then certainly the property of the United States, then it would be a territorial court. Because those provisions in the Covenant, the call for the establishment of the NMI district court, were immediate. They were in effect. And so when they were in effect, it became the property of the United States. So again, it's territorial court. It's a treaty court. But most importantly, appellant who bears the heavy burden does not tell the court the proper resolution. What do we do if it is a treaty court? Appellant doesn't say. What is being struck? What is the remedy? What is unconstitutional? What statute needs to be removed? What language? Again, appellant doesn't say so, and that's her burden. So, she cannot prevail on that point. The test that she offers, which is not supported by the case law, remoteness and permanence, that's never been the standard. The standard is the unique characteristics of the court, the circumstances, the location, and all of that. It's a case-by-case analysis, and for the reasons I just discussed, they are sufficient. I mean, this was... Is this argument made often in front of your courts? I mean, I'm surprised there isn't anything published. We would like it to be published, so this would not happen. If you win. Yes, Your Honor. Either way, I think a published opinion is helpful. The other... If I may move on to the other point. Count 3. Count 3 has never been challenged. The sufficiency of the evidence was not challenged at the trial level at any point in time. It is not challenged now on appeal. The instructions that the appellant claims were so important to the theory of her case have no applicability to the 1001 charge, which arises from conduct a year and a half after her visa was denied. A false statement made to HSI, not to USCIS, but to HSI during the course of their criminal investigation. So, it is... That sentence for count 3 was probation to be served concurrent with count 1 and count 2. And under this court's... The sufficiency of the visa fraud is being challenged on appeal. It is, but not count 3. Remind me which one was count 3. 1001, false statement to HSI. Sentence was the same. Specifically, probation to be served concurrently. Were you the trial lawyer? I was not. Well, since you weren't there, but... I was there, but I was... Okay. All right. What... If you were going to... If I asked you to sort of give me a nutshell, what was the gist of her defense? I think he properly articulated what he attempted to be her defense, and that's another problem. She lost, but that being said, but what was... What was her argued defense? At the time she entered the marriage, she thought it was a bona fide marriage? The only... What has gotten us here with the vagueness, DOMA, Windsor arguments, is because she said, in response to a leading question, did you intend to establish a life together? She said, yes. In the face of all the evidence that shows that's plainly not possible or true. And so from that was launched these arguments that bring us here today. That would be their defense, that she did intend to establish a life... That's what I'm saying. So she wants to take it from, you know, that she intended to, even though it worked out that they... So if a person intended to establish a life together, you know, say when you got married you intended to, but then after that circumstances were such that it just didn't happen, would they be guilty? I mean, if a jury believed it. Now, I'm not saying that that was what all the evidence was here or whatever, but if that were your intent and you proved it, the fact that you never lived together wouldn't necessarily defeat that if they believed it, right? Yes. I mean, even under her standard, fair inference of disqualification doesn't mean she had to be... She was not qualified. She went on a prolonged two-year scheme to defraud, provide misstatements, false documents, to cover the true nature of her marriage. So even if, in fact, she did intend to establish life together, she still made numerous material misrepresentations that caused USCIS to engage in or potentially capable of influencing their decision. Whether that... But if the jury convicted her here, wouldn't it be necessarily true that they didn't believe she intended to have a life together? I mean, because if... That's what I'm asking you. If you intended to have a life together, even though you didn't have a life together after, you would not be guilty, right? If a jury believed you. No, I still think you'd be guilty because it's influenced the decision. It is not determinative of the decision. And again, she provided numerous false... She lied. She admittedly, under her own testimony, lied that she never resided with this individual, which... And the government had the USCIS examiner testify, asked to the materiality of that answer, what she would have done in the face of knowing the truth of that answer. Well, I guess what I'm just asking you, her theory of defense, if it had been believed, was what? I think that's a better question posed to her. I believe it is... Well, if you try it... When you try a case, you better know what the answer is. Although, I'm still not 100% sure I know. Because it goes to the jury instruction. This is not a theory of the case, jury instruction issue. You cannot say, my theory of the case, and I get a jury instruction on a legal issue of first impression, that has not been resolved by any court, and I am entitled... My theory... Her theory is that the court... Is that the government has an added element? Well, how could... That is way too convenient. That's her theory and such. By saying that materiality applies to count one, that's adding an element to the United States. What if the jury acquits on that point? That will never be remedied. Those are for courts to determine. So she's... I understand that, but what your argument there is not that she's not entitled to a theory of her case. Your argument is that materiality is not an element, and that's why it shouldn't be given, right? Yes, partially. Let's talk about that. In Forbes versus INS, that's an immigration removal case. This court applied a heightened denaturalization materiality standard to fraudulent statements made in a visa application, even though the petitioner's citizenship was not on the line. So was that case wrongly decided? I wouldn't say it's wrongly decided. I would say it's inapplicable. Why? It's an immigration case. And just because it's an immigration case? Well, it's certainly less applicable than the materiality standard as defined in criminal cases. In cases such as Service Deli or Matsumoro, Godin, Prescott, these were criminal cases where the court has said, and it's sprinkled throughout all the... And I'm aware of that. There's Chen, Matsumoro, all of those cases. But I'm just curious that in this case, in immigration removal, where there's a lot at stake as well, it was applied. I do think the contexts are different. We are charging... In every element that she was found guilty of, she either had to be willful or deliberate. So she... That is where the crime, where the real culpability comes from. The materiality, we'd say, is a lower standard in the criminal context. It should be the intent to influence, because what we are really capturing is her criminal intent. Those cases did not deal with that. That was the crux. To the extent it is against us, it's an outlier. It's an immigration case. There are other cases that are much more controlling. But to say that Forbes applies here is to say that she can go on a two year campaign willfully and intentionally provide false statements. And then after the fact, it turns out she was qualified and that's okay. The standard is to influence, not to determine. And so we would say that if there is a lower standard of materiality in the criminal context, that is appropriate. Because any harm that could come from that is remedied by the higher mental state. So what about count three in materiality? The district court omitted the definition there. It did not say with intent to influence, but then it was sufficiently covered by other instructions, we would say. Because it was defined in count two. And that would be harmless error, perhaps, and also an issue not raised by the appellant. But plain error, harmless error, still would be sufficient, covered by count two, would be our position. If I may, to the extent the court is concerned about the evidence as to count two, again, the only count that's being sufficiently evidenced, government reiterates the points that it made in its brief, but also points out other things or highlights. Six documents that this defendant submitted lied about the address. Numerous documents were made under penalty of perjury, including her I-45. She had, to the extent that her English proficiency is being questioned, she checked the box saying, or her form that she signed and adopted said that she met with this husband, his fake husband, on numerous occasions. Not on numerous occasions, but in detailed conversations, such as about the joint bank account, about his, he needed to wear a hat in one of the pictures. She also told him her underwear was red for the immigration interview. The information the husband testified, he did not read it, did not fill out the form. Somebody filled it out. And that information, the jury's reasonable, it is reasonable for the jury to infer that the form came from her. Because it was testified to and there's no evidence to the contrary, it came from him. If I may, and just in conclusion, just to reiterate what kind of opens the door in the appellant's eyes to all of these arguments that are being launched based on the yes or no of do you intend to establish a life together. I just want to cut and paste her own story. And she has asked, Ms. Tang, why did you marry Jesse? I want to work. How would getting married help you work? Because if I married Jesse, I could obtain the IR status, the card. And if I had the card, I do not have to look for contract work. Were you in love with him? No, I didn't. Why didn't you live with him? Excuse me. Was there a main reason why you didn't live with him? Yes, I have a boyfriend. Was there any time when you seriously considered to stay with Jesse? Yes, when was that? The time I applied for a green card. Why did you seriously consider going to stay with him at that time? Because at that time, I thought I had to in order to obtain a green card. It's necessary that I stay with him because I need to work. So you were doing, this is to her, so were you willing to do anything necessary to be eligible and get a green card? Yes. Why did you divorce him? My green card was denied and I have a daughter. In the face of that is Ms. Tang, at the time you got married to Jesse, did you completely disbelievable, just on any standard, clearly disregarded by the disbelieved by the jury? Okay, but I just, you're arguing this like you're arguing to a jury. This is an appellate panel. So the relevance of that, as I see what you're saying, is you're telling us what the strength of your case is if we're engaging in a sufficiency of the evidence or if we because we're not going to rehear this case like the jury. How is it unconstitutionally vague in light of that testimony? How, when she is clearly engaging in deceptive conduct, how does Windsor have any applicability to this case under those facts? That's why I was offering that. Okay. It sounded like you were arguing to the jury right there. Thank you. Thank you. We'll give you two minutes for rebuttal. Briefly, Your Honor, on the Article Three point, counsel stated that the covenant provided for the establishment of the district court. It does so provide. It does not provide, however, whether it will be an Article Three court or a non Article Three court. It doesn't say anything on that point one way or the other. So there's nothing in the covenant that mandates the creation of a non Article Three court. An Article Three court would be equally consistent with the covenant. Um, the question was raised. What is the what was the gist of the of the defense? And the defense at trial was materiality. Um, that the representations that Miss Tang made were not material, that she basically told unnecessary lies. It was not disputed that she made the statements. It was not disputed that her statements were false. The problem was she thought that she had a misunderstanding of the law. She didn't know anything about about establishing a life together. She didn't realize that that was sufficient. And although she did intend to establish a life together, she thought it was necessary that they actually be living together at that time. So that's what she told the immigration, uh, personnel when she applied. Um, she lied. She knew she lied. Yes, but she didn't think her lies were that important. No, she thought her lies. She I'm just trying to understand what the defense is here. The defense is that the misrepresentations she made were not material because she thought she thought at the time they were material. She thought that that was what she needed to say. In fact, that wasn't what she needed. It was not necessary that they'd be living together. That was not the standard. She met the actual standard. She just didn't meet the standard. What she thought was the standard. Um, and she made misrepresentations as if she met her her own version, which was not accurate of the standard. Um, but since she did actually meet the real standard, those misrepresentations were immaterial. That was the defense. It was a materiality defense. That was the entire issue on which we went to trial. Therefore, it's especially important that the jury be instructed and be accurately instructed on the materiality issue. Um, with respect to that issue, uh, counsel mentioned the, uh, the Kunji's case as if that it was as if it were a different standard for a from what we, uh, from our Kunji's instruction. That stands Kunji's on its head. Kunji's made a point that, that materiality, as the court said, is not a hapax legomenon. It's not a term that appears only once. It drew on the criminal definition of materiality and carried that over to the naturalization context. It said, this is our definition for all contexts. We're taking it from the criminal law and using it in naturalization. So to turn that around and say, now this is just only for naturalization and not for the criminal law is just the opposite of what the court actually held. It's the same standard. Kunji's is the standard. It does state the standard for, for what is materiality and in the criminal, both the criminal and the naturalization and the visa context, any context where it's not otherwise, uh, uh, defined. Thank you, counsel. Your time has expired. That's all. Thank you very much. Thank you both for the arguments. The case just heard will be submitted for decision. Thank you both for your travels down, uh, for the argument.
judges: Thomas, Callahan, Murguia